74396, 74429. CLARK v. GENERAL MOTORS ACCEPTANCE
CORPORATION; and vice versa.
(363 SE2d 813)

BEASLEY, Judge.

In August 1981 Mr. and Mrs. Clark entered into an installment contract with Backus Cadillac for the purchase of a new car. The contract, ultimately financed by GMAC, provided for monthly payments of $340.81 for 48 months.

Mrs. Clark had recurring mechanical problems with the car which were never fully corrected. Because of her dissatisfaction, Mrs. Clark ceased making payments in March 1982. On May 5, GMAC sent Mrs. Clark a letter stating that she was in default and had 10 days to cure it or the entire balance of the debt would be due. Mrs. Clark did not respond.

On May 20, an attorney for GMAC sent Mrs. Clark a letter notifying her that she was in default and demanding the entire sum of the debt ($11,252) plus attorney fees. Mrs. Clark did not respond. On May 24, GMAC filed a mortgage foreclosure action. As a result, Mrs. Clark was ordered on June 16 to make payments of $1,022.43 into the court registry. This amount covered three months' back payments allegedly due. The order specified that Mrs. Clark would retain possession of the car until the matter was concluded. She filed an answer on June 23 and paid the required amount. No further payments were made.

Mrs. Clark, GMAC, and Backus Cadillac met in November to see whether an agreement could be reached regarding the car. By this time, Mrs. Clark was five months behind on payments. She contends that the agreement reached at this meeting was that the vehicle would be repaired to her satisfaction, and only then would she be required to make her account current. GMAC concedes that a promise was made to repair the car but denies any oral modification of the written payment schedule. There is no written evidence of such a modification. The car was left with Backus Cadillac to be repaired, and when Mrs. Clark returned for it, she was told she could not take it, but she did anyway.

In July 1983, the court ordered the payment of past due sums into the registry. Mrs. Clark told the court that since the car was not operating satisfactorily she would relinquish it to the court in lieu of payments until the litigation concluded. However, she did not do so.

Mrs. Clark became physically disabled within the terms of her credit disability insurance. The insurance proceeds were credited to

her account, which brought it within approximately $300 of the amount due.

On August 1, Mrs. Clark's husband committed suicide. On August 19, the court issued a writ of possession, as the car was still in Mrs. Clark's possession, and the car was repossessed on August 27. GMAC sent a notice of sale to Mrs. Clark on August 31, but it was returned undelivered to GMAC. The car was sold on December 8.

Mrs. Clark filed an "Amendment to Answer, Counterclaim, and Motion to add Parties" in February 1985. GMAC moved for and was granted separate partial summary judgments, from which Mrs. Clark appeals, on the following issues: the notice of intent to seek legal fees was legally sufficient; the notice of post repossession sale was legally sufficient; obtaining a writ of possession less than three weeks after Mr. Clark's suicide did not give rise to an action for intentional infliction of emotional distress; Mrs. Clark waived and was estopped from asserting by counterclaim the issues of GMAC's taking unlawful possession of the automobile and fraud; GMAC did not waive payments and default by way of an oral promise; and GMAC acted in compliance with the contract and applicable law.

GMAC cross-appeals, citing as error the denial of its motion for summary judgment "as to any alleged tortious conduct on the part of the plaintiff not ruled upon in other motions for partial summary judgment" and the denial of its motion for summary judgment on fraud, conspiracy, and punitive damages.

## Case No. 74396

1. Adequacy of notice of attorney fees under OCGA § 13-6-11 (a) (3).

Mrs. Clark urges that the May 20 letter of notice of default was ambiguous and misleading and so was inadequate. The letter notifies Mrs. Clark that she is in default, and further states that the note "contains a provision for attorney fees and pursuant to Georgia Code Annotated § 20-506, you are notified hereby that the provision relative to the payments of attorney's fees are set out in said note in addition to the principal and interest shall be enforced, and that you have 10 days from the receipt of this letter *to pay the attorney's fees.* If said principal and interest is not so paid, then payment of the attorney's fees in addition to the principal will be demanded and enforced." (Emphasis supplied.) GMAC admits that the phrase "10 days . . . to pay attorney's fees" is a typographical error, and should read "10 days . . . to pay principal and interest."

One of the substantive matters to be set forth in a letter of notice regarding attorney fees is that "the party has 10 days from the receipt of such notice to pay the principal and interest without the attorney

fees." *General Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 119 (249 SE2d 596) (1978). The error in GMAC's letter makes it unclear exactly what is being sought. First there is a reference to attorney fees, and then to "said" principal and interest. It is simply too far a stretch to conclude as a matter of law from this that "the debtor is informed that he has 10 days from receipt of notice within which to pay principal and interest without incurring any liability for attorney fees." *General Elec. Credit Corp.*, supra at 118. See also *Albany Production Credit Assn. v. Sizemore*, 175 Ga. App. 826 (334 SE2d 872) (1985).

GMAC cites *Turner Advertising Co. v. Prakas*, 164 Ga. App. 788 (298 SE2d 553) (1982) to support the contention that a typographical error does not negate "substantial compliance" with the notice requirement. *Turner*, however, dealt with an error which resulted in the notice being read to provide that no attorney fees would be sought if payment was delayed for at least 10 days. The error here was not, as in *Turner*, so obviously "a typographical error which could not reasonably have mislead anyone." *Turner*, supra at 790. The notice having misstated to the debtor an essential condition to *avoiding* attorney fees, summary judgment should not have been granted to GMAC on this issue. Nor is the statement such that a jury would be compelled to conclude that a reasonable man would *not* deduce the correct message, so appellant Clark was not entitled to summary judgment on the issue either.

2. Adequacy of notice of post-repossession sale under OCGA § 11-9-504 (3).

Mrs. Clark contends that she was never notified in advance of the post-repossession sale of the car. GMAC shows that a letter was sent but was returned unopened. Appellant's response is that there remains a question of fact as to whether the letter's contents constituted a reasonable attempt at notification, thus precluding summary judgment on the issue. We need not examine the legal efficacy of the letter's contents.

To begin with, the Uniform Commercial Code does not prohibit a post-repossession sale without notice. OCGA § 11-9-507 (1). *Trust Co. of Columbus v. Kite*, 164 Ga. App. 119, 121 (294 SE2d 606). A debtor's remedies for a sale without notice are recovery of loss caused by an inadequate sale price, *Trust Co.*, supra, and a debtor is protected in a suit on any deficiency by a rebuttable presumption that the value of the collateral is equal to the indebtedness. *Emmons v. Burkett*, 256 Ga. 855, 857 (353 SE2d 908) (1987).

Mrs. Clark does not allege inadequacy of price. GMAC would not be seeking a deficiency judgment, because the sale of the car resulted in a surplus rather than a deficiency. Even if summary judgment should not have been granted on the issue, no harm resulted. "Appellant must show harm as well as error to prevail." *Pope v. Propst*, 179

Ga. App. 211, 217 (345 SE2d 880) (1986).

Mrs. Clark acknowledges this facet of GMAC's case but contends that Backus Cadillac's "fraudulent involvement" in the resale of the car should have an effect on the disposition of this issue. However, appellant fails to advance any fraudulent conduct on the part of Backus Cadillac which affects the adequacy of notice. The trial court's ruling stands.

3. Intentional infliction of emotional distress.

Mrs. Clark's action for intentional infliction of emotional distress is based upon the "manner and circumstances" involved as to the trial court's issuance of the writ of possession on August 19, 1983. The impropriety alleged is not in obtaining the court order, but the timing thereof, i.e., the fact that it was issued shortly after Mr. Clark's suicide. Mrs. Clark urges that it was "part of the plan to strike appellant when she would least be able to respond."

However, no evidence is offered to prove this "plan." "[I]n the absence of any evidence suggesting either a malicious purpose on their part or wanton disregard of the [other party's] rights, their behavior cannot reasonably be characterized as outrageous or egregious." *Arrowsmith v. Williams*, 174 Ga. App. 690, 692 (3) (331 SE2d 30) (1985). GMAC was entitled to summary judgment on this issue.

4. Waiver and estoppel.

The trial court granted GMAC summary judgment on the issues raised by Mrs. Clark's counterclaim as to GMAC unlawfully obtaining possession of the property and related fraud. Mrs. Clark maintains that, because there had been no pretrial order in this case, she was entitled to add these assertions by counterclaim.

"A claim which either matured or was acquired by the pleader after serving his pleading may, *with the permission of the court*, be presented as a counterclaim by supplemental pleading." (Emphasis supplied.) OCGA § 9-11-13 (e). "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may *by leave of court* set up the counterclaim by amendment." (Emphasis supplied.) OCGA § 9-11-13 (f). In such cases, "the trial judge is vested with discretion which will not be controlled absent a legal abuse." *Clairmont Foods v. Huddle House*, 142 Ga. App. 171 (235 SE2d 635) (1977).

Here more was involved than whether the additional pleadings would be allowed, for the trial court considered the merits of Mrs. Clark's allegations in light of what had transpired during the course of the proceedings. The court found that Mrs. Clark was estopped from asserting the issues in question by her conduct respecting the order granting possession to GMAC and that by failing to raise the issues until over a year after the sale of the automobile, she had acquiesced in the procedure and had waived her rights to contest the

manner in which possession was acquired. Since the counterclaim had never been formally permitted and based upon the trial court's undisputed findings, it was not error to grant the partial motion for summary judgment.

5. Waiver of payments and default.

Mrs. Clark claims that GMAC waived further payments on the car and the right to bring a default action by the oral agreement of November 18 that she would not be liable for any further payments until the car was repaired. GMAC denies ever having made such a statement which, if made, would be unenforceable.

The sales contract provides that "[n]o modification of any of the terms or conditions hereof shall be valid in any event, and the buyer expressly waives the right to rely thereon, unless made in writing duly executed by the seller." Such a provision is enforceable, thereby rendering any subsequent oral modifications void. *Hartline-Thomas v. H. W. Ivey & Co.*, 161 Ga. App. 91, 93 (289 SE2d 296) (1982). Moreover, "parol evidence is not admissible to vary the terms of a binding written agreement, even to establish fraud." *Cosby v. A. M. Smyre Mfg. Co.*, 158 Ga. App. 587, 591 (6) (281 SE2d 332) (1981).

The making of an oral promise regarding deferment of payments not being a *material* fact, summary judgment was warranted.

6. Compliance with the contract and applicable law by GMAC.

The court ruled against Mrs. Clark on this issue, which she here addresses in several parts, only one of which we consider of sufficient merit to discuss.

Mrs. Clark claims that GMAC was late in crediting payments into her account, thereby wrongfully computing late charges so as to create a default figure. For example, she asserts that the September 1, 1983 insurance payment went into the court registry rather than directly to GMAC and was not credited to her account until December 6. The terminology used by Mrs. Clark that there was no "default" on her part is not technically accurate for by failing to make *timely* payments she was in "default" under the terms of her contract. However, we consider substance and not mere nomenclature. *Plank v. Bourdon*, 173 Ga. App. 391, 393 (326 SE2d 571) (1985). The substance of this contention is that at the time of sale there had been late payments to GMAC which had accumulated in sufficient amount for Mrs. Clark to have redeemed the property. See OCGA § 11-9-506.

Where the secured party effectively deprives the debtor of the right to redeem the collateral, the debtor has the right to recover "any loss caused by a failure to comply with the provisions of this part." OCGA § 11-9-507 (1). The improper refusal to permit redemption is a conversion of the collateral. *Mann v. United Mo. Bank*, 689 SW2d 830, 831 (Mo. App. 1985). Therefore, if at or prior to the sale GMAC had sufficient funds from Mrs. Clark to meet the requirements of the

Code, a valid claim might have been asserted against GMAC.

OCGA § 11-9-506 provides that a debtor may redeem the collateral "by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding, and preparing collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses." The UCC Official Code Comment to § 9-506 observes that the entire principal owed plus all allowed expenses must be submitted, but the amount need not exceed that sought by the creditor. *Draughon v. Gen. Fin. Credit Corp.*, 362 S2d 880, 885 (Ala. 1978). GMAC's itemized statement of the amount owed just prior to sale showed a balance due of $126.75. Nevertheless, $1,358.85 of the debt consisted of attorney fees claimed. As was pointed out in the first division of this opinion, whether attorney fees are obtainable and whether they were reasonable has not been determined. Thus, the grant of summary judgment on this issue was premature and error.

## Case No. 74429

7. a) GMAC cross-appealed on two issues. The first was the court's language in ruling on the issue of intentional infliction of emotional distress: "as to any alleged tortious conduct on the part of the plaintiff not ruled upon in other motions for summary judgment, said motion for partial summary judgment is denied."

GMAC's apparent objection to the wording is that it is unnecessary because it embraces other tort claims made, when every other allegation was ruled on, leaving no further issues for adjudication. Mrs. Clark, on the other hand, insists that there are issues left to try.

1) She asserts that there remains a genuine issue of material fact as to intentional infliction of emotional distress. This issue was disposed of in Division 3, supra.

2) She also maintains that there is a genuine issue of material fact as to the fraud claim. This claim is disposed of infra.

3) Finally, she asserts that an unlawful trespass took place, presenting an issue for the factfinder. This issue was not raised below and therefore cannot be considered here. *City of Buford v. Thomas*, 179 Ga. App. 769, 772 (2) (347 SE2d 713) (1986).

Even if the wording of the ruling was erroneous, GMAC fails to show any harm suffered and consequently is not entitled to reversal. *Estate of Sam Farkas v. Dougherty County School System*, 178 Ga. App. 135 (342 SE2d 501) (1986). Since Mrs. Clark cannot demonstrate an overlooked issue, the language is merely surplus.

b) The trial court denied GMAC's motion for summary judgment on the issues of fraud, conspiracy, and punitive damages. The latter is

based on the fraud claim, which arises from a statement GMAC allegedly made that Mrs. Clark could defer further car payments until the car was repaired to her satisfaction. GMAC denies such a statement. If one essential element under a theory of recovery is lacking, the movants are entitled to summary judgment, regardless of issues of fact as to other essential elements. *Friedman v. State Farm &c. Ins. Co.*, 177 Ga. App. 873, 874 (341 SE2d 275) (1986).

*Phillips v. Atlantic Bank &c. Co.*, 168 Ga. App. 590 (309 SE2d 813) (1983), is similar. The bank promised appellant that it would not foreclose on appellant's property, contrary to the foreclosure provisions of the security deed. The court affirmed summary judgment for the bank, stating that "Appellee's alleged 'agreement' not to foreclose also constitutes nothing more than an unenforceable, broken promise, unsupported by consideration. Consequently, appellant's claim of fraud based on this alleged promise must fail." Id. at 591.

Thus, assuming GMAC made the statement as Mrs. Clark claims, she clearly would not be able to maintain an action for fraud. Summary judgment was authorized.

On the main appeal 74396, summary judgment on the notice of intent to seek attorney fees and summary judgment on GMAC's compliance with the contract and the law relevant thereto are reversed; the remaining partial grants of summary judgment are affirmed. On the cross-appeal 74429 the denial of GMAC's motion for summary judgment on the claims for fraud, conspiracy and punitive damages is reversed, otherwise affirmed.

*Judgments affirmed in part and reversed in part in 74396. Judgments affirmed in part and reversed in part in 74429. McMurray, P. J., and Sognier, J., concur.*

DECIDED DECEMBER 1, 1987.

*Alton D. Kitchings, Lloyd D. Murray*, for appellant.
*James M. Thomas, James L. Elliott, Susan B. Paul*, for appellee.